# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIRA NAGLE, SEAN MOORE,
LOGAN SABOL, LYDIA
ULRICH, ATHENA GERLEK,
ELIJAH FRY, C.H., a Minor, by
JEFFREY HILL, Guardian, B.B.,
a Minor, by HEATHER BEAM
and ERIC BEAM, Guardians,
K.B., a Minor, by MICHELLE
SANTONASTASO, Guardian,
E.B., a Minor, by ERIC BROWN,
Guardian, M.B., a Minor, by
MONICA STOCKER, Guardian,
B.C., a Minor, by TIMOTHY
CARDEN and VIRGINIA
CARDEN, Guardians, S.C., a
Minor, by MICHAEL
CORCORAN, Guardian, C.C., a
Minor, by LINDSAY COHAN,
Guardian, H.H., a Minor, by
MICHELLE ENNIS, Guardian,
S.K., a Minor, by ALICEA
PURCELL-ANTHONY,
Guardian, J.K., a Minor, by
BRENDA KRASINSKY,
Guardian, W.R., a Minor, by
GEORGE RONDEAU and
TRACEY RONDEAU, Guardians,
K.R., a Minor, by JOHN
RUCHINSKI and CINDY
RUCHINSKI, Guardians, L.S., a
Minor, by SHIRLEY SHAFFER,
Guardian, DEIDRA HERBERT,
and LEANORD MARTIN,

     *Plaintiffs,*

:
:   Civil Action No.
:
:
:
:   **JURY TRIAL DEMANDED**
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

|  | : |
| --- | --- |
| v. | : |
|  | : |
| THE POTTSVILLE AREA | : |
| SCHOOL DISTRICT, SARAH | : |
| YODER, KAYLA PETERS, and | : |
| CYNTHIA STASULLI, | : |
|  | : |
| *Defendants.* | : |

## **COMPLAINT**

Plaintiffs Kira Nagle, Sean Moore, Logan Sabol, Lydia Ulrich,

Athena Gerlek, Elijah Fry, C.H., a Minor, by Jeffrey Hill, Guardian,

B.B., a Minor, by Heather Beam and Eric Beam, K.B., a Minor, by

Michelle Santonastaso, Guardian, E.B., a Minor, by Eric Brown,

Guardian, M.B., a Minor, by Monica Stocker, Guardian, B,C., a Minor,

by Timothy Carden and Virginia Carden, Guardians, S.C., a Minor, by

Michael Corcoran, Guardian, C.C., a Minor, by Lindsay Cohan,

Guardian, H.H., a Minor, by Michelle Ennis, Guardian, S.K., a Minor,

by Alicea Purcell-Anthony, Guardian, J.K., a Minor, by Brenda

Krasinsky, Guardian, W.R., a Minor, by George Rondeau and Tracey

Rondeau, Guardians, K.R., a Minor, by John Ruchinski and Cindy

Ruchinski, Guardians, L.S., a Minor, by Shirley Shaffer, Guardian,

Deidra Herbert, and Leonard Martin, who are current students and

teachers at Gillingham Charter School ("Gillingham"), bring this complaint, pursuant to 42 U.S.C. § 1983, against Defendant Pottsville Area School District ("PASD") and its administrators, Defendants Sarah Yoder, Kayla Peters, and Cynthia Stasulli (collectively, the "PASD Defendants"), and in support hereof aver as follows:

## INTRODUCTION

1.    At the cost of young high school students living in impoverished Schuylkill County, who were eager to learn more about higher education opportunities, the PASD Defendants allowed their personal animosity towards Gillingham and its students/teachers to prevail.

2.    On or about October 3, 2024, Plaintiffs were subjected to unnecessary force, verbal intimidation, and public humiliation at the hands of the PASD Defendants simply for attending the 13th Annual Schuylkill County Regional College Fair, which they were initially invited to attend by the PASD Defendants as Schuylkill County public high school students.

3.     The Schuylkill County Regional College Fair (the "College Fair") is an annual event hosted by the PASD Defendants at Martz Hall in Pottsville, Pennsylvania.

4.     Martz Hall, built in 1970, is located in the PASD middle school and serves as a gymnasium for PASD, hosting regular public sporting events, including boys' and girls' basketball games.

5.     The purpose of the College Fair, like any other college fair, is, and was, to provide all public high school students (which charter school students are) within Schuylkill County the opportunity to meet with prospective colleges and universities.

6.     The hope, of course, is for these Schuylkill County public high school student attendees to pursue their higher education at these institutions.

7.     Nevertheless, upon arriving at the College Fair on October 3, 2024, Plaintiffs were immediately met with hostility and aggressively confronted by Defendant Yoder, who refused to let Plaintiffs inside the gymnasium at Martz Hall, where each of the attending colleges and universities had set up informational booths/tables.

8.    Instead, and incredibly, Defendant Yoder and Defendant
Peters directed the other public school student attendees and
college/university representatives to leave and vacate the Martz Hall
gymnasium floor and wait in the upper-lobby bleachers that overlooked
the College Fair, while Plaintiffs walked around and viewed the
unattended booths/tables alone and by themselves.

9.    Defendant Yoder also immediately called the police,
threatened to have Plaintiffs arrested, threatened to seize Plaintiffs' cell
phones for attempting to film their encounter (all of which was
occurring on public property during the school day), and unlawfully
detained Plaintiffs.

10.    While Defendant Yoder did, eventually, permit Plaintiffs to
view the college booths/tables, Plaintiffs were *only* permitted to do so for
an extremely limited amount of time and, upon the condition that, they
keep their cell phones in their pockets, conditions which were *not*
imposed on any other attendee at the College Fair.

11.    After being threatened by the PASD Defendants for
exercising their right to free speech and assembly, being unlawfully
touched and detained, and being retaliated against for exercising their

freedom of speech and assembly, the spectacle that unfolded at the College Fair on October 3, 2024 left Plaintiffs feeling humiliated, ridiculed, and robbed of the same College Fair experience provided to every other Schuylkill County public high school student in attendance.

12.    Unfortunately, this is not the first instance in which the PASD Defendants have showcased their propensity to intimidate and silence Gillingham.

13.    In two separate appellate proceedings before the Pennsylvania State Charter Appeal Board ("CAB"), the PASD Defendants were previously shown to have improperly attempted to dismantle Gillingham's charter through bullying and intimidation.

14.    In 2010, in an effort to thwart the success of Gillingham's revised charter application, the PASD Defendants called parents who had signed letters of intent to enroll their children at Gillingham and told them that "they had to disenroll their children from Pottsville," which was a clear "scare tactic." *See Gillingham Charter School v. Pottsville Area School District*, CAB Docket No. 2010-7, CAB Docket No. 2010-7, attached hereto as Exhibit A.

15.    Six years later, after Gillingham submitted a timely application to renew its charter, the PASD's Board of School Directors adopted a Resolution recommending fifteen (15) grounds for nonrenewal of Gillingham's charter, all of which were soundly rejected "as improper" by the CAB. *See Gillingham Charter School v. Pottsville Area School District*, CAB Docket No. 2016-11, attached hereto as Exhibit B.

16.    Tellingly, since the time Gillingham opened until recently, PASD refused to pay Gillingham directly every month for students enrolled at Gillingham in direct violation of the Charter School Law. *See* 24 P.S. § 17-1725-A(a)(5).

17.    As a result, Gillingham had to regularly request that the Pennsylvania Department of Education ("PDE") redirect PASD's state subsidy to Gillingham to pay for the PASD students enrolled at Gillingham, as expressly provided for in the Charter School Law. *See* 24 P.S. § 17-1725-A.

18.    Incredibly, in one instance, Defendant Yoder called the police and filed a police report against Gillingham when Gillingham requested and received redirection from the PDE during the 2023-24 school year, again, as expressly provided for in the Charter School Law.

*See* 24 P.S. § 17-1725-A(5). Similar to the College Fair, the police were dispatched at the behest of the PASD Defendants to unnecessarily intervene in a purely civil, non-criminal matter that had been handled by Gillingham in accordance with the law.

19.    The PASD Defendants' long-standing disdain for Gillingham came to a head on October 3, 2024, when the PASD Defendants continued their disturbing pattern of bullying and silencing of Gillingham, its teachers, and its students.

## **PARTIES**

20.    Gillingham is a Pennsylvania nonprofit corporation, operating as a public charter school under the Pennsylvania Charter School Law, with a principal place of business at 915 Howard Ave. Pottsville, PA 17901.

21.    Gillingham currently operates a public charter school in Schuylkill County pursuant to a charter issued by Defendant PASD—at the direction of the CAB—under the Charter School Law, 24 P.S. § 17-1701-A, *et seq.*

22.    Plaintiff Kira Nagle is an 18-year-old, 12th grade student enrolled at Gillingham, who resides with her mother at 980 Deturksville Road, Pine Grove, PA 17963.

23.    Plaintiff Sean Moore is an 18-year-old, 12th grade student enrolled at Gillingham, who resides with his parents at 424 Pine Street, Tamaqua, PA 18252.

24.    Plaintiff Logan Sabol is an 18-year-old, 12th grade student enrolled at Gillingham, who resides with his father at 121 Walnut Street, Tuscarora, PA 17982.

25.    Plaintiff Lydia Ulrich is an 18-year-old, 12th grade student enrolled at Gillingham, who resides at 521 Main Street, Pottsville, PA 17901.

26.    Plaintiff Athena Gerlek is an 18-year-old, 12th grade student enrolled at Gillingham, who resides with her grandmother at 100 Clay Street, New Philadelphia, PA 17959.

27.    Plaintiff Elijah Fry is an 18-year-old, 12th grade student enrolled at Gillingham, who resides with his father at 521 Main Street, Pottsville, PA 17901.

28.    Plaintiff C.H. is a 17-year-old minor, 12th grade student enrolled at Gillingham, who resides with his father, Plaintiff Jeffery Hill, at 983 Deiberts Valley Road, Schuylkill Haven, PA 17972.

29.    Plaintiff Jeffery Hill is the father and guardian of C.H., who resides at 983 Deiberts Valley Road, Schuylkill Haven, PA 17972.

30.    Plaintiff B.B. is a 17-year-old minor, 11th grade student enrolled at Gillingham, who resides with her parents, Plaintiffs Heather Beam and Eric Beam, at 1701 W. Market Street, Pottsville, PA 17901.

31.    Plaintiffs Heather Beam and Eric Beam are the parents and guardians of B.B., who reside at 1701 W. Market Street, Pottsville, PA 17901.

32.    Plaintiff K.B. is a 17-year-old minor, 12th grade student enrolled at Gillingham, who resides with her mother, Plaintiff Michelle Santonastaso, at 24 S. Jackson Street, Pottsville, PA 17901.

33.    Plaintiff Michelle Santonastaso is the parent and guardian of K.B., who resides at 24 S. Jackson Street, Pottsville, PA 17901.

34.    Plaintiff E.B. is a 17-year-old minor, 11th grade student enrolled at Gillingham, who resides with his father, Plaintiff Eric Brown, at 62 Water Street, PO Box 41, Cumbola, PA 17930.

35.    Plaintiff Eric Brown is the parent and guardian of E.B., who resides at 62 Water Street, PO Box 41, Cumbola, PA 17930.

36.    Plaintiff M.B. is a 17-year-old minor, 12th grade student enrolled at Gillingham, who resides with her mother, Plaintiff Monica Stocker, at 1631 W. Market Street, Pottsville, PA 17901.

37.    Plaintiff Monica Stocker is the parent and guardian of M.B., who resides at 1631 W. Market Street, Pottsville, PA 17901.

38.    Plaintiff B.C. is a 17-year-old minor, 12th grade student enrolled at Gillingham, who resides with his parents, Plaintiffs Timothy Carden and Virginia Carden, at 116 Farmers Road, Ringtown, PA 17967.

39.    Plaintiffs Timothy Carden and Virginia Carden are the parents and guardians of B.C., who reside at 116 Farmers Road, Ringtown, PA 17967.

40.    Plaintiff S.C. is a 17-year-old minor, 12th grade student enrolled at Gillingham, who resides with her father, Plaintiff Michael Corcoran, at 610 North Third Street, Pottsville, PA 17901.

41.    Plaintiff Michael Corcoran is the parent and guardian of S.C., who resides at 610 North Third Street, Pottsville, PA 17901.

42.    Plaintiff C.C. is a 17-year-old minor, 12th grade student enrolled at Gillingham, who resides with his mother, Plaintiff Lindsay Cohan, at 35C Frieden Manor, Schuylkill Haven, PA 17972.

43.    Plaintiff Lindsay Cohan is the parent and guardian of C.C., who resides at 35C Frieden Manor, Schuylkill Haven, PA 17972.

44.    Plaintiff H.H. is a 17-year-old minor, 11th grade student enrolled at Gillingham, who resides with her mother, Plaintiff Michelle Ennis, at 13 W. Centre Street, Ashland, PA 17921.

45.    Plaintiff Michelle Ennis is the parent and guardian of H.H., who resides at 13 W. Centre Street, Ashland, PA 17921.

46.    Plaintiff S.K. is a 16-year-old minor, 11th grade student enrolled at Gillingham, who resides with his mother, Plaintiff Alicea Purcell-Anthony, at 127 N. Line Street, Frackville, PA 17931.

47.     Plaintiff Alicea Purcell-Anthony is the parent and guardian of S.K., who resides at 127 N. Line Street, Frackville, PA 17931.

48.     Plaintiff J.K. is a 16-year-old minor, 11th grade student enrolled at Gillingham, who resides with his grandmother, Plaintiff Brenda Krasinsky, at 26 Barefield Drive, Pottsville, PA 17901.

49.     Plaintiff Brenda Krasinsky is the grandparent and guardian of J.K., who resides at 26 Barefield Drive, Pottsville, PA 17901.

50.     Plaintiff W.R. is a 16-year-old minor, 11th grade student enrolled at Gillingham, who resides with his parents, Plaintiffs George Rondeau and Tracey Rondeau, at 613 Snyder Street, Pottsville, PA 17901.

51.     Plaintiffs George Rondeau and Tracey Rondeau are the parents and guardians of W.R., who reside at 613 Snyder Street, Pottsville, PA 17901.

52.     Plaintiff K.R. is a 17-year-old minor, 12th grade student enrolled at Gillingham, who resides with her parents, John Ruchinski and Cindy Ruchinski, at 35 Village Road, PO Box 55, Lost Creek, PA 17946.

53.    Plaintiffs John Ruchinski and Cindy Ruchinski are the parents and guardians of K.R., who reside at 35 Village Road, PO Box 55, Lost Creek, PA 17946.

54.    Plaintiff L.S. is a 16-year-old minor, 11th grade student enrolled at Gillingham, who resides with her mother, Plaintiff Shirley Shaffer, at 34 W. Ogden Street, Girardville, PA 17935.

55.    Plaintiff Shirley Shaffer is the parent and guardian of L.S., who resides at 34 W. Ogden Street, Girardville, PA 17935.

56.    Plaintiff Deidra Herbert is an English teacher at Gillingham, residing at 20 Cottage Hill W, Pottsville, PA 17901.

57.    Plaintiff Leonard Martin is the Athletic Director & Development Coordinator at Gillingham, residing at 24 Rebel Hill Road, Mountain Top, PA 18707.

58.    Defendant PASD is a public school district organized and existing under the Pennsylvania Public School Code of 1949, 24 P.S. §§ 1-101 *et seq.*, with its principal place of business located at 1501 West Laurel Boulevard, Pottsville, PA 17901.

59.    PASD is the authorizer of Gillingham's public charter school in Schuylkill County pursuant to the Pennsylvania Charter School Law,

24 P.S. § 17-1701-A, *et seq.* In 2010, PASD was directed by the CAB to authorize Gillingham's charter after PASD rejected Gillingham's revised charter application. *See* Exh. A.

60.    Defendant Sarah Yoder is the PASD Superintendent. Defendant Yoder is named in her personal and official capacity.

61.    Defendant Kayla Peters is employed as a School Guidance Counselor at PASD. Defendant Peters is named in her personal and official capacity.

62.    Defendant Cynthia Stasulli is employed as a School Guidance Counselor at PASD. Defendant Stasulli is named in her personal and official capacity.

63.    Defendants PASD, Yoder, Peters, and Stasulli are collectively referred to herein as the "PASD Defendants."

64.    At all times material hereto, the PASD Defendants, as public school district employees, were acting under color of law and as agents of the Commonwealth of Pennsylvania.

## **JURISDICTION AND VENUE**

65.    Because this action alleges multiple violations of the United States Constitution, it raises several federal questions, thereby

conferring subject matter jurisdiction on this Court under 28 U.S.C. § 1331.

66.    This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367, because the claim arises out of the same operative facts as Plaintiffs' Section 1983 claims and "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

67.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to the present claims occurred in the district, namely Schuylkill County.

## FACTUAL ALLEGATIONS

**A.    Plaintiffs are invited to the 13th Annual Schuylkill County Regional College Fair.**

68.    The College Fair is an annual event hosted by PASD inside the public gymnasium at Martz Hall, a PASD-owned and operated building located at 1501 West Laurel Boulevard, Pottsville, PA 17901.

69.    As advertised on higher-education institutions' websites across the country, the College Fair was set to take place on October 3, 2024, from 7:45 a.m. until 11:30 a.m.

70.    The purpose of the College Fair is and was to provide Schuylkill County public high school students the opportunity to meet with representatives from prospective colleges and universities.

71.    On or about June 4, 2024, Gillingham administrators first received a "save the date" invitation to attend the College Fair at the direction of Defendant Stasulli.

72.    In relevant part, the "save the date" invitation stated: "The College Fair at Martz Hall for the 24/25 School year is Thursday, October 3, 2024. Mark your calendar. Hope to see you there. Sign-ups for Districts will be sent out at the beginning of the new school year." A true and correct copy of the June 4, 2024 email is attached hereto as Exhibit C.

73.    Notably, included in the June 4th "save the date" email were private school institutions in addition to the public schools located in Schuylkill County, including Marian Catholic High School ("Marian Catholic") and Nativity of the Blessed Virgin Mary High School ("Nativity BVM").

74.    Like Gillingham, Marian Catholic and Nativity BVM are educational affiliates of the Schuylkill Intermediate Unit 29 ("IU 29"),

17

along with PASD. *See* IU 29 Educational Directory, available at

https://www.iu29.org/Page/605.

75.    However, unlike Marian Catholic and Nativity BVM,

Gillingham is a *public* school located in Schuylkill County, just like

PASD.

76.    Approximately two months later, on or about August 2,

2024, Defendant Stasulli sent a follow-up email regarding the College

Fair, which included the specified time (8:00 a.m. until 11:30 a.m.) and

location (Martz Hall, 1501 West Laurel Boulevard, Pottsville, PA

17901). A true and correct copy of the August 2, 2024 email is attached

hereto as Exhibit D.

77.    Similar to the June 4th "save the date" email, the August 2,

2024 follow-up email also included Marian Catholic, which, again, is a

not a *public* school like Gillingham located in Schuylkill County. *See id.*

78.    Additionally, the August 2nd email attached the "College Fair

Flyer with Registration Form" ("Registration Form"). A true and correct

copy of the College Fair Flyer with Registration Form is attached hereto

as Exhibit E.

79.    The Registration Form requested that each participating "School/Organization" RSVP by Friday, September 6, 2024. *See id.*

**B.    After RSVPing, Plaintiffs are suddenly and unexpectedly disinvited from attending the 13th Annual Schuylkill County Regional College Fair.**

80.    On or about August 26, 2024, Gillingham submitted the completed Registration Form to PASD, thereby notifying the PASD Defendants that Gillingham intended to "bring" approximately "27" students to attend the College Fair on October 3, 2024, and that the students and teachers (Plaintiffs herein) would be "arriving" at approximately "8:45" a.m. A true and correct copy of Gillingham's Completed Registration Form is attached hereto as Exhibit F.

81.    On or about September 23, 2024, Gillingham received a phone call from Defendant Stasulli advising Gillingham that the June 4th and August 2nd invitations were allegedly sent to Gillingham by mistake and that Plaintiffs were thereby uninvited to attend and participate in the College Fair.

82.    According to the PASD Defendants, only public school districts affiliated with the IU 29 have been historically invited to the College Fair, despite the fact that Gillingham, along with Marian

Catholic and Nativity BVM, are, in fact, educational affiliates of the IU 29 and were included in the two previous invitations sent out by the PASD Defendants on June 4th and August 2nd.

83.    In fact, Plaintiffs Nagle and Gerlek received separate and personal invitations from two colleges/universities that would be attending the College Fair, inviting them to visit their booths/tables and speak with the college/university representatives in attendance at the College Fair.

84.    Because Plaintiffs are students and teachers at Gillingham—a public school located in Schuylkill County—who had received no less than two invitations from the PASD Defendants to attend the College Fair and who had submitted a completed Registration Form to attend the College Fair, they believed they had every legal right to still attend the College Fair.

85.    As such, the President of the Board of Trustees of Gillingham reached out to Defendant Yoder to request that the PASD Defendants reconsider their "mistaken invitation" to Gillingham and permit Plaintiffs to attend the College Fair, along with all of the other

public high school students in Schuylkill County. A true and correct copy of the October 2, 2024 email is attached hereto as Exhibit G.

86.    In response, Defendant Yoder again reiterated that Plaintiffs were not permitted to attend the College Fair at Martz Hall on October 3, 2024, and even suggested that Gillingham should "contact Nativity [BVM—a *private* school] to see if [Gillingham] could attend their fair." *See id.*

**C.    Plaintiffs are blocked from attending the 13th Annual Schuylkill County Regional College Fair and publicly humiliated by the PASD Defendants.**

87.    On or about October 3, 2024, Plaintiffs arrived at Martz Hall at approximately 8:45 a.m., as stated in Gillingham's Completed Registration Form previously submitted to the PASD Defendants. *See* Exh. F.

88.    When Plaintiffs arrived, the doors to enter Martz Hall were initially closed with a sign pinned on the door advising attendees for the College Fair to call the listed phone number to be let inside.

89.    However, before Plaintiffs had a chance to call the phone number on the door, an employee of PASD opened the door to let out

three students and permitted Plaintiffs to proceed inside Martz Hall to the College Fair.

90.    Plaintiffs then made their way to the registration table for the College Fair located on the floor of the gymnasium of Martz Hall, where Plaintiffs were initially asked to identify their school, to which Plaintiff Herbert stated, "Gillingham Charter School."

91.    Upon information and belief, Defendant Stasulli, who was seated at the registration table on the gymnasium floor at Martz Hall immediately responded, "you're not supposed to be here, you're not invited. You have to leave."

92.    Because Plaintiffs were aware of and concerned with the PASD Defendants' history of hostility and bias towards Gillingham and its student/teachers, Plaintiffs came to the College Fair prepared with a statement, which Plaintiff Herbert read out loud:

> Our attorneys have advised us that, as a public
> school in Schuylkill County, we have every right
> to be here and attend the Schuylkill County
> Regional College Fair, which is being held on
> public property and is being funded with public
> monies. Any attempts to exclude or prevent us
> from attending this event would be blatantly
> discriminatory, patently illegal, and subject you
> and Pottsville Area School District to liability for

clear violations of state and federal equal
protection laws.

93.    While Plaintiff Herbert read this statement, Defendant

Yoder proceeded to corral and move Plaintiff Martin, who was filming

this initial encounter. To this end, Defendant Yoder placed her hands

on Plaintiff Martin and guided him outside of the gymnasium area of

Martz Hall.

94.    Plaintiff C.H.—a student—had also been filming the

encounter when Defendant Yoder frantically stormed toward him,

grabbed his arm, forced his arm down, and attempted to seize his phone

from his hand.

95.    Defendant Yoder then continued to attempt to physically

remove Plaintiffs from the gymnasium floor of Martz Hall where the

College Fair was occurring.

96.    At one point, Defendant Yoder physically blocked Plaintiffs

Nagle, Ulrich, B.B., K.B., M.B., S.C., C.H., S.K., J.K., S.M., and K.R.,

from walking towards the College Fair booths/tables on the Martz Hall

gymnasium floor and prevented Plaintiffs Nagle, Ulrich, B.B., K.B.,

M.B., S.C., C.H., S.K., J.K., S.M., and K.R. from learning about the

colleges/universities in attendance and talking to the college/university representatives onsite.

97.    In fact, as Plaintiff S.K. walked towards the College Fair booths/tables, Defendant Yoder pushed him back and forcefully restrained him by grabbing him on his shoulders.

98.    Defendant Yoder continued to restrain Plaintiff S.K. until he advised her that if she continued to keep her hands on his person, he would remove them himself, after which she removed her hands from his shoulders.

99.    Likewise, Defendant Yoder placed her hands on the shoulders of Plaintiff K.B., moved Plaintiff K.B. aside, and then walked forward bumping Plaintiff K.B.'s shoulder.

100.  Plaintiffs, who were not being permitted to leave the registration desk area on the gymnasium floor of Martz Hall, were being detained by, upon information and belief, Defendants Peters and Stasulli in an effort to keep them from proceeding towards the booths/tables for the College Fair on the gymnasium floor.

101.  However, Plaintiffs Nagle, Moore, Sabol, Ulrich, Gerlek, Fry, C.H., B.B., K.B., E.B., M.B., B.C., S.C., C.C., H.H., S.K., J.K., W.R.,

K.R., and L.S. proceeded to move towards the booths/tables of the College Fair in order to gather information from the colleges/universities in attendance.

102.  Upon seeing that Plaintiffs Nagle, Moore, Sabol, Ulrich, Gerlek, Fry, C.H., B.B., K.B., E.B., M.B., B.C., S.C., C.C., H.H., S.K., J.K., W.R., K.R., and L.S. were moving toward the College Fair booths/tables, Defendant Yoder attempted to impede and block the students from speaking or interacting with the college/university representatives on the gymnasium floor of Martz Hall.

103.  Likewise, upon seeing that Plaintiffs Nagle, Moore, Sabol, Ulrich, Gerlek, Fry, C.H., B.B., K.B., E.B., M.B., B.C., S.C., C.C., H.H., S.K., J.K., W.R., K.R., and L.S. were moving toward the College Fair booths/tables, Defendant Peters—using a microphone plugged into the PASD intercom system—instructed the college/university representatives and other public school students in attendance for the College Fair to immediately leave the Martz Hall gymnasium floor and to proceed to the upper-lobby bleachers that overlooked the gymnasium floor. Upon information and belief, Defendant Peters made this announcement upon the direction and command of Defendant Yoder.

104.  Defendant Yoder also personally asked a number of the college/university representatives in attendance at the College Fair to immediately leave the Martz Hall gymnasium floor and to proceed to the upper-lobby bleachers that overlooked the gymnasium floor.

105.  Indeed, as commanded by the PASD Defendants, all but a few college/university representatives in attendance left the Martz Hall gymnasium floor and proceeded to the bleachers above the floor with the other public high school students, where they sat, stared, and gawked at Plaintiffs walking through the empty College Fair on the gymnasium floor with unattended booths/tables.

106.  Even the few college/university representatives who did remain on the Martz Hall gymnasium floor at their booths/tables and who did choose to speak to Plaintiffs were subsequently approached by Defendant Yoder and instructed to stop speaking with Plaintiffs, and directed to go to the upper-level bleachers with the rest of the college/university representatives and other public high school students attending the College Fair.

107.  Plaintiffs felt humiliated, embarrassed, and shamed by this experience of having their peers and college recruiters stare and gawk

at them while they walked through the empty College Fair by themselves with no college/university representatives to talk to or meet.

**D.    The PASD Defendants call the police on Plaintiffs.**

108.  Approximately twenty minutes later, officers from the Pottsville Police Department arrived at Martz Hall after being called by the PASD Defendants.

109.  At this point, Defendant Yoder and Plaintiff Herbert reached a compromise to allow Plaintiffs to remain at the College Fair (with attended booths/tables) for no more than thirty minutes, only if Plaintiffs agreed to turn over their phones to the PASD Defendants and to not record the situation any further, conditions which were *not* imposed on any other attendee at the College Fair.

110.  Plaintiffs refused to turn over their phones to the PASD Defendants—again, because such a condition was *not* imposed on any other attendee at the College Fair—and then proceeded to walk around the College Fair with their phones in their pockets, only using their phones to take pictures of college/university brochures and related admissions materials.

111.  Because Plaintiffs were limited to the thirty minutes indiscriminately allotted by the PASD Defendants, Plaintiffs, unlike their peers from the other public high schools in Schuylkill County, were unable to speak to all of the college/university representatives that they would have liked to at the College Fair.

112.  Thirty minutes later, at approximately 9:45 a.m., Plaintiffs left Martz Hall peacefully, albeit humiliated, embarrassed, and shamed by what had just occurred and how the PASD Defendants had unlawfully treated them.

**E.    The PASD Defendants continue to try to silence and oppress Plaintiffs even after the 13th Annual Schuylkill County Regional College Fair ended.**

113.  Incredibly, the PASD Defendants attempts to silence Plaintiffs did not end there. Approximately one week later, after Plaintiffs publicly voiced the humiliation and oppressive conduct that they had experienced at the College Fair on October 3, 2024, legal counsel for the PASD Defendants sent Gillingham a letter, seeking to prevent and restrict Plaintiffs from continuing to publicly discuss their encounters and interactions with the PASD Defendants at the College

Fair. A true and correct copy of the October 11, 2024 letter is attached hereto as Exhibit H.

114.  Indeed, the PASD Defendants' October 11, 2024 letter specifically demanded that Gillingham remove and delete from its website and Facebook account the public statements and narratives of Plaintiffs that mentioned or suggested, in any way, "improper and unprofessional conduct on the part of Dr. Yoder or any other Pottsville Area School District personnel." *See id.*

115.  According to the PASD Defendants, Plaintiffs are alleged to have presented an "unfair portrayal of the events on October 3, 2024," despite the fact that much of Plaintiffs' encounters and interactions with the PASD Defendants at the College Fair were captured on video and recorded.

**COUNT I**
**42. U.S.C. § 1983 – First Amendment Violation (Free Speech)**
**(All Plaintiffs v. All Defendants**)

116.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

117.  Plaintiffs engaged in constitutionally protected First Amendment conduct by attending the College Fair and recording the

PASD Defendants' unlawful conduct at the College Fair on October 3, 2024, at Martz Hall.

118.  The PASD Defendants opened up Martz Hall for the use by all Schuylkill County public high school students for the College Fair and, thereby, created either a "designated" or "limited" public forum for which they could not discriminate against speech on the basis of viewpoint. *See Satanic Temple, Inc. v. Saucon Valley School District*, 671 F.Supp.3d 555, 568 (E.D. Pa. 2023).

119.  The PASD Defendants' ban of Plaintiffs from attending the College Fair and recording the PASD Defendants' unlawful conduct at the College Fair on October 3, 2024, at Martz Hall, discriminated against Plaintiffs' free speech rights on the basis of Plaintiffs' viewpoint.

120.  Indeed, the PASD Defendants engaged in viewpoint discrimination by banning *only* Plaintiffs from attending and recording the College Fair on October 3, 2024.

121.  The PASD Defendants banned Plaintiffs from attending and recording the College Fair on October 3, 2024, because their attendance and viewpoints expressed were controversial, which constitutes

impermissible viewpoint discrimination. *Id.*; *see also Ne. Pa. Freethought Soc'y v. Cty. Of Lackawanna Transit Sys.*, 938 F.3d 424, 439 (3d. Cir. 2019).

122.  The PASD Defendants cannot—and will not be able to—justify their unreasonable and unlawful restrictions on Plaintiffs' speech.

123.  As a direct and proximate cause of the PASD Defendants' actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and significant injury to their reputation.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the PASD Defendants and award Plaintiffs compensatory and punitive damages, as well as the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988.

### COUNT II
### 42. U.S.C. § 1983 – First Amendment Violation (Assembly)
### (All Plaintiffs v. All Defendants)

124.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

125.  Plaintiffs engaged in constitutionally protected First Amendment conduct by attending the College Fair and recording the PASD Defendants' unlawful conduct at the College Fair on October 3, 2024, at Martz Hall.

126.  The PASD Defendants opened up Martz Hall for the use by all Schuylkill County public high school students for the College Fair and, thereby, created either a "designated" or "limited" public forum for which they could not discriminate against speech or assembly on the basis of viewpoint. *See Satanic Temple, Inc.* 671 F.Supp.3d at 568.

127.  The PASD Defendants' ban of Plaintiffs from attending the College Fair in Martz Hall, a "designated" or "limited" public forum, and the PASD Defendants' attempts to physically remove Plaintiffs from Martz Hall, violated Plaintiffs' First Amendment right to assemble, subjecting their actions to strict scrutiny. *See id.*; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

128.  Indeed, the PASD Defendants' ban of Plaintiffs from attending the College Fair in Martz Hall, a "designated" or "limited" public forum, and the PASD Defendants' attempts to physically remove Plaintiffs from Martz Hall, was not content-neutral or narrowly tailored

to serve a significant government interest, nor did it leave open ample alternative channels for communication or information. *See Ward*, 491 U.S. at 791.

129.  Rather, the PASD Defendants simply banned Plaintiffs from attending the College Fair because their attendance and viewpoints expressed were controversial, which constitutes impermissible viewpoint discrimination. *See Satanic Temple, Inc.* 671 F.Supp.3d at 568.; *see also Ne. Pa. Freethought Soc'y*, 938 F.3d at 439.

130.  The PASD Defendants cannot—and will not be able to— justify their unreasonable and unlawful restrictions on Plaintiffs' assembly at Martz Hall.

131.  As a direct and proximate cause of the PASD Defendants' actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and significant injury to their reputation.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the PASD Defendants and award Plaintiffs compensatory and punitive damages, as well as the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988.

**COUNT III**
**42. U.S.C. § 1983 – First Amendment Retaliation**
**(All Plaintiffs v. All Defendants**)

132.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

133.  Plaintiffs engaged in constitutionally protected conduct by attending and recording the College Fair on October 3, 2024 at Martz Hall.

134.  Plaintiffs were subjected to adverse and unlawful action and discrimination by the PASD Defendants when they were threatened to be arrested for simply attending and recording the College Fair.

135.  Plaintiffs were subjected to adverse and unlawful action by the PASD Defendants when they were inexplicably restricted to attending the College Fair alone and by themselves without participation from the college/university representatives in attendance.

136.  Plaintiffs were subjected to adverse and unlawful action by the PASD Defendants when their ability to participate in the College Fair was conditioned on Plaintiffs' free speech rights being suppressed by surrendering their cell phones to the PASD Defendants and/or agreeing to keep their cell phones in their pockets at all times.

137.  As a direct and proximate cause of the PASD Defendants' actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and significant injury to their reputation.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the PASD Defendants and award Plaintiffs compensatory and punitive damages, as well as the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988.

## COUNT IV
### 42. U.S.C. § 1983 –Fourth Amendment Violation
### (All Plaintiffs v. All Defendants)

138.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

139.  Plaintiffs have the right to be "secure…against unreasonable searches and seizures[.]" U.S. Const. amend. IV.

140.  At all relevant times, the PASD Defendants were acting under the color of state law.

141.  On or about October 3, 2024, the PASD Defendants unlawfully seized Plaintiffs on the gymnasium floor of Martz Hall, where Plaintiffs were detained and their movement was restricted.

142.  The PASD Defendants' seizure of Plaintiffs was unreasonable under the circumstances, because Plaintiffs had been previously invited to attend the College Fair (on two occasions) and had the legal right to attend the College Fair as public high school students and teachers from the Schuylkill County geographic area. *See New Jersey v. T.L.O*, 469 U.S. 325, 336-37 (1985) ("In carrying out searches and other disciplinary functions pursuant to [educational and disciplinary] policies, school officials act as representatives of the State …, and they cannot claim … immunity from the strictures of the Fourth Amendment.").

143.  As a direct and proximate cause of the PASD Defendants' actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and significant injury to their reputation.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the PASD Defendants and award Plaintiffs compensatory and punitive damages, as well as the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988.

**COUNT V**
**42. U.S.C. § 1983 – Equal Protection Violation**
**(All Plaintiffs v. All Defendants)**

144.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

145.  The PASD Defendants deprived Plaintiffs of equal protection of the laws under the United States Constitution by denying Plaintiffs of the same opportunity to attend the educational College Fair at Martz Hall, which opportunity was provided to all other similarly situated public high school students in Schuylkill County. *See* U.S. Const. amend. XIV, § 1.

146.  Upon information and belief, this animus and discrimination against Plaintiffs was driven and pursued by the PASD Defendants because of the status of Plaintiffs as charter school students/teachers instead of being traditional school district students/teachers like PASD.

147.  Specifically, the PASD Defendants deprived Plaintiffs of equal protection of the laws under the United States Constitution by the following conduct:

a.    On or about September 23, 2024, Defendant Stasulli initiated the effort to disinvite Plaintiffs from the College Fair, where

other public, and even private, Schuylkill County institutions had been invited to attend for educational purposes.

      b.    On or about October 3, 2024, Defendants Peters and Stasulli refused to allow Plaintiffs to enter and attend the College Fair.

      c.    On or about October 3, 2024, Defendant Yoder physically removed Plaintiff Martin and attempted to physically prevent Plaintiffs from entering the College Fair on the Martz Hall gymnasium floor.

      d.    On or about October 3, 2024, Defendant Peters, at the direction of Defendant Yoder, instructed the college/university representatives and other public high school students at the College Fair to leave and vacate their booths/tables on the gymnasium floor and proceed to the Martz Hall upper bleachers overlooking the gymnasium floor.

      e.    On or about October 3, 2024, because the PASD Defendants instructed the college/university representatives at the College Fair to leave and vacate their booths/tables on the gymnasium floor, Plaintiffs were required to visit empty and unattended booths/tables.

f.    On or about October 3, 2024, the PASD Defendants permitted Plaintiffs to view and walk through the attended booths/tables at the College Fair, only if Plaintiffs agreed to keep their phones in their pockets, and imposed a thirty-minute time restriction, conditions which were not imposed on any other College Fair attendees.

148.  Together, the PASD Defendants' conduct deprived Plaintiffs of their constitutional rights to equal protection of the laws.

149.  As a direct and proximate cause of the PASD Defendants' actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and significant injury to their reputation.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the PASD Defendants and award Plaintiffs compensatory and punitive damages, as well as the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988.

## COUNT VI
## 42. U.S.C. § 1983 – Excessive Force Resulting in Substantive Due Process Violation
## (Plaintiffs Nagle, Ulrich, Martin, B.B., K.B., M.B., S.C., C.H., S.K., J.K., S.M., and K.R. v. Defendant Yoder)

150.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

151.  At all relevant times, Defendant Yoder was acting under the color of state law.

152.  On or about October 3, 2024, Defendant Yoder, as an agent of PASD, used excessive force by physically assaulting Plaintiff C.H. Indeed, Defendant Yoder stormed toward Plaintiff C.H. as he was peacefully attending and recording the College Fair when Defendant Yoder grabbed his arm, forced it down, and attempted to seize his cell phone.

153.  On or about October 3, 2024, Defendant Yoder, as an agent of PASD, used excessive force by physically assaulting Plaintiff S.K. Indeed, as S.K. walked towards the College Fair booths/tables, Defendant Yoder pushed him back and forcefully retrained him by grabbing him on his shoulders.

154.  Defendant Yoder continued to retrain Plaintiff S.K. until he advised her that if she continued to keep her hands on his person, he would remove them himself, after which she removed her hands from his shoulders.

155.  Likewise, Defendant Yoder placed her hands on the shoulders of Plaintiff K.B., moved Plaintiff K.B. aside, and then walked forward bumping Plaintiff K.B.'s shoulder.

156.  Similarly, Plaintiffs Nagle, Ulrich, Martin, B.B., M.B., S.C., J.K., S.M., and K.R. all reported being physically touched, moved, and/or apprehended by Defendant Yoder.

157.  The assaults and batteries upon Plaintiffs Nagle, Ulrich, Martin, B.B., K.B., M.B., S.C., C.H., S.K., J.K., S.M., and K.R. by Defendant Yoder were unnecessary, unlawful, outrageous, intentional, and constitutes a violation of substantive due process provided by the Fourteenth Amendment. *See Metzger ex rel. Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988) (citing *Hall v. Tawney*, 621 F.2d 607, 611 (4th Cir. 1980)).

158.  At no time were Defendant Yoder's actions reasonable or justified.

41

159.  As a direct and proximate cause of Defendant Yoder's actions, Plaintiffs Nagle, Ulrich, Martin, B.B., K.B., M.B., S.C., C.H., S.K., J.K., S.M., and K.R. have suffered physical injuries, as well as psychological and emotional injuries.

WHEREFORE, Plaintiffs Nagle, Ulrich, Martin, B.B., K.B., M.B., S.C., C.H., S.K., J.K., S.M., and K.R. respectfully request that this Court enter judgment in their favor and against Defendant Yoder and award Plaintiffs compensatory and punitive damages, as well as the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988.

## COUNT VII
## 42 U.S.C. § 1983 – Eighth Amendment Violation
### (Plaintiffs v. Defendants)

160.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

161.  Plaintiffs have the right to be free from "cruel and unusual punishment[.]" U.S. Const. amend. VIII.

162.  At all relevant times, the PASD Defendants were acting under the color of state law.

163.  On or about October 3, 2024, the PASD Defendants subjected Plaintiffs to cruel and unusual punishment by forcing Plaintiffs to walk around the empty College Fair gymnasium floor while their peers and the college/university representatives (who Plaintiffs came to see) sat, stared, and gawked at them from the bleachers above.

164.  As a direct and proximate cause of the PASD Defendants' actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and significant injury to their reputation.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Yoder and award Plaintiffs compensatory and punitive damages, as well as the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988.

## COUNT VIII
## 42 U.S.C. § 1983 & 42 U.S.C. § 1985 – Civil Conspiracy
### (Plaintiffs v. Defendants)

165.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

166.  At all relevant times, the PASD Defendants were acting under the color of state law.

167.  The PASD Defendants participated in a conspiracy to violate multiple of Plaintiffs' constitutional and civil rights, including their rights under the First Amendment, Fourth Amendment, Eighth Amendment, and the Equal Protection Clause.

168.  Specifically, the PASD Defendants reached an agreement and/or understanding to violate Plaintiffs' aforementioned constitutional and civil rights.

169.  All of the PASD Defendants acted in concert together.

170.  The objective of this agreement was to deny Plaintiffs of their constitutional and civil rights as set forth herein.

171.  The foregoing intentional acts evidence a meeting of the minds and/or understanding between the PASD Defendants to deprive Plaintiffs of their constitutional and civil rights.

172.  As a result of this conspiracy, Plaintiffs were deprived of their constitutional and civil rights as set forth herein.

173.  As a direct and proximate cause of the PASD Defendants' actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and significant injury to their reputation.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the PASD Defendants and award Plaintiffs compensatory and punitive damages, as well as the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988.

**COUNT IX**
**<u>Violation of the Equal Protection Clause of the Pennsylvania</u>**
**<u>Constitution</u>**
**(All Plaintiffs v. All Defendants)**

174.  Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if the same were set forth at length herein.

175.  Article III, Section 14 of the Pennsylvania Constitution states that "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. III, § 14.

176.  As applied, the right to public education is a fundamental right under the Pennsylvania Constitution and any equal protection challenge thereto shall be examined under strict scrutiny. *See William Penn School District v. Pennsylvania Department of Education*, 294 A.3d 537, 959 (Pa. Cmwlth. 2023).

177.  Similar to an equal protection analysis under the Fourteenth Amendment of the United States Constitution, under the Pennsylvania Constitution, equal protection "demands that uniform treatment be given to similarly situated parties." *Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1209-10 (Pa. 2020).

178.  The PASD Defendants deprived Plaintiffs of equal protection of the laws under the Pennsylvania Constitution by denying Plaintiffs of the same opportunity to attend the educational College Fair at Martz Hall, which opportunity was provided to all other similarly situated public high school students in Schuylkill County. *See* Pa. Cost. art. III, § 32.

179.  Upon information and belief, this animus and discrimination against Plaintiffs was driven and pursued by the PASD Defendants because of the status of Plaintiffs as charter school students/teachers instead of being traditional school district students/teachers like PASD.

180.  Specifically, the PASD Defendants deprived Plaintiffs of equal protection of the laws under the Pennsylvania Constitution by the following conduct:

a.    On or about September 23, 2024, Defendant Stasulli initiated the effort to disinvite Plaintiffs from the College Fair, where other public, and even private, Schuylkill County institutions had been invited to attend for educational purposes.

b.    On or about October 3, 2024, Defendants Peters and Stasulli refused to allow Plaintiffs to enter and attend the College Fair.

c.    On or about October 3, 2024, Defendant Yoder physically removed Plaintiff Martin and attempted to physically prevent Plaintiffs from entering the College Fair on the Martz Hall gymnasium floor.

d.    On or about October 3, 2024, Defendant Peters, at the direction of Defendant Yoder, instructed the college/university representatives and other public high school students at the College Fair to leave and vacate the booths/tables on the gymnasium floor and proceed to the Martz Hall upper bleachers overlooking the gymnasium floor.

e.    On or about October 3, 2024, because the PASD Defendants instructed the college/university representatives at the College Fair to leave and vacate their booths/tables on the gymnasium

47

floor, Plaintiffs were required to visit empty and unattended booths/tables.

   f. On or about October 3, 2024, the PASD Defendants permitted Plaintiffs to view and walk through the attended booths/tables at the College Fair, only if Plaintiffs agreed to keep their phones in their pockets, and imposed a thirty-minute time restriction, conditions which were not imposed on any other College Fair attendees.

  181. Together, the PASD Defendants' conduct deprived Plaintiffs of their constitutional rights to equal protection of the laws under the Pennsylvania Constitution.

  182. As a direct and proximate cause of the PASD Defendants' actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and significant injury to their reputation.

  WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the PASD Defendants and award damages and other equitable remedies, including declaratory and injunctive relief, as well as the cost of prosecuting this action together with attorneys' fees.

Respectfully submitted,

**KLEINBARD LLC**

Dated: October 21, 2024

**By:** /s/ Mark E. Seiberling

Mark E. Seiberling, Esq.
Miranda L. Dang, Esq.
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Phone: (215) 496-7222
Eml: mseiberling@kleinbard.com
    mdang@kleinbard.com