**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

KIRA NAGLE, et al.,

                Plaintiffs,

   v.

THE POTTSVILLE AREA SCHOOL
DISTRCT, et al.,

             Defendants.

CIVIL ACTION NO. 3:24-CV-1808

(MEHALCHICK, J.)

## MEMORANDUM

Presently before the Court is a motion to dismiss for failure to state a claim filed by Defendants Pottsville Area School District ("PASD"), PASD Superintendent Sarah Yoder ("PASD Superintendent"), Kayla Peters ("Defendant Peters"), and Cynthia Stasulli ("Defendant Stasulli") (collectively, "Defendants"). (Doc. 10). On November 16, 2022, a collection of Gillingham Charter School ("Gillingham") students over the age of 18 and under the age of 18 through their parents and guardians[1] ("Student Plaintiffs"), Gillingham English teacher Deidra Herbert ("Plaintiff Herbert"), and Gillingham athletic director Leonard Martin ("Plaintiff Martin") (collectively, "Plaintiffs") initiated this action by filing a complaint pursuant to 28 U.S.C. § 1331. (Doc. 1). For the following reasons, Defendants' motion to dismiss shall be **GRANTED in part** and **DENIED in part**. (Doc. 10).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the complaint and for the purposes of the

---

[1] Plaintiffs clarified at oral argument that the parents and guardians listed in the complaint are only named because they are the parents and guardians of plaintiffs under the age of 18 at the time of filing, and that the parents and guardians themselves are not plaintiffs bringing any claims against Defendants. (Doc. 21, at 33).

instant motion, taken as true. (Doc. 1). On or about June 4, 2024, Gillingham administrators received a "save the date" invitation to the Schuylkill County Regional College Fair ("College Fair"), an event hosted by PASD at Martz Hall, a public-school gymnasium. (Doc. 1, ¶¶ 3-4, 71-72). The invitation stated: "The College Fair at Martz Hall for the 24/25 School year is Thursday, October 3, 2024. Mark your calendar. Hope to see you there. Sign-ups for Districts will be sent out at the beginning of the new school year." (Doc. 1, ¶¶ 71-72). Along with Gillingham, the invitation was also sent to two private, Catholic schools. (Doc. 1, ¶ 73).

Around August 2, 2024, Gillingham and the Catholic schools received a follow up email from Defendant Stasulli informing them of the time and location of the College Fair and providing the schools with a registration form for the College Fair ("Registration Form"). (Doc. 1, ¶¶ 76-78). Around August 26, 2024, "Gillingham submitted the completed Registration Form to PASD, thereby notifying the PASD Defendants that Gillingham intended to 'bring' approximately '27' students to attend the College Fair". (Doc. 1, ¶ 80).

On or about September 23, 2024, Defendant Stasulli notified Gillingham that its invitation to the College Fair and the follow up emails were sent by mistake, and therefore its students could not attend. (Doc. 1, ¶ 81). Gillingham asked PASD to reconsider, at which point PASD Superintendent reiterated that the Plaintiffs were not welcome at the event. (Doc. 1, ¶¶ 85-86). Plaintiffs attended the College Fair anyway. (Doc. 1, ¶ 87).

Upon their arrival, Defendant Stasulli asked the Plaintiffs to leave. (Doc. 1, ¶¶ 87-91). Citing PASD's "history of hostility and bias towards Gillingham and its students/teachers," Plaintiff Herbert, a Gillingham teacher, read a statement the Student Plaintiffs had prepared in which they declared their belief that they had a right to attend the College Fair. (Doc. 1, ¶ 92). After Plaintiffs read the statement, Defendants reacted by physically blocking Plaintiffs

from entering the fair and shoving them away from the event. (Doc. 1, ¶¶ 93-102). Plaintiffs nonetheless attempted to film the interaction and physically enter the College Fair. (Doc. 1, ¶¶ 93-102).

In response to Plaintiffs' attempts to enter the College Fair, Defendants instructed the other attendees of the College Fair to leave the gym floor and sit on the upper-lobby bleachers. (Doc. 1, ¶¶ 103-106). This included the college admissions representatives. (Doc. 1, ¶¶ 103-106). Around this time, Defendants called the police who arrived approximately twenty minutes later. (Doc. 1, ¶108). By the time the police arrived, PASD Superintendent and Plaintiff Herbert proposed an agreement where Plaintiffs spend thirty minutes in the College Fair, however without their phones. (Doc. 1, ¶¶108-109). Student Plaintiffs refused to turn over their phones to Defendants "because such a condition was *not* imposed on any other attendee at the College Fair." (Doc. 1, ¶ 110). The parties compromised, and Plaintiffs were permitted to spend thirty minutes at the College Fair with the restriction that they could have their phones, but only use their cameras to take photos of college admissions materials. (Doc. 1, ¶ 110).

In the week following the College Fair, Plaintiffs "publicly voiced the humiliation and oppressive conduct that they experienced at the College Fair." (Doc. 1, ¶ 113). In response to this, approximately one week after the College Fair, legal counsel for PASD sent Gillingham a letter seeking prevent Plaintiffs from continuing to publicly discuss their encounters with Defendants at the College Fair. (Doc. 1, ¶ 113). The letter also demanded "Gillingham remove and delete from its website and Facebook account" all "public statements and narratives" that mention or suggest "improper and unprofessional conduct on the part of Dr. Yoder or any other Pottsville Area School District personnel." (Doc. 1, ¶ 114).

On October 21, 2024, Plaintiffs filed their complaint asserting Nine Counts of violations of state and federal law. (Doc. 1). The Nine Counts are as follows: Count I – violations of Plaintiffs' First Amendment free speech rights; Count II – violations of Plaintiffs' First Amendment assembly rights; Count III – unconstitutional retaliation against Plaintiffs for exercising their First Amendment rights; Count IV – violations of Plaintiffs' Fourth Amendment right to be free of unreasonable seizure; Count V – violations of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment; Count VI – violations by PASD Superintendent of Plaintiff Nagle, Ulrich, Martin, B.B., K.B., M.B., S.C.,C.H., S.K., J.K., S.M., and K.R.'s substantive due process right to be free from excessive force under the Fourteenth Amendment; Count VII – violations of Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment; Count VIII – violations of 42 U.S.C. § 1985; Count IX – violations of Plaintiffs' rights under the Pennsylvania Constitution's Equal Protection Clause. (Doc. 1, at 29-48). As relief, Plaintiffs seek damages, declaratory relief, and injunctive relief. (Doc. 1, ¶¶ 116-182)

On December 23, 2024, Defendants filed a motion to dismiss, and on January 23, 2025, they filed a brief in support of their motion. (Doc. 10; Doc. 11). On January 21, 2025, Plaintiffs filed a brief in opposition to Defendants' motion to dismiss. (Doc. 14). Defendants filed a reply brief on February 4, 2025. (Doc. 15). On February 7, 2025, Plaintiffs filed a motion for leave to file *sur-reply* brief in further opposition to Defendants' motion to dismiss the complaint. (Doc. 16). Defendants filed an opposition to Plaintiffs' motion for leave to file a *sur-reply* brief on February 21, 2025. (Doc. 17). On February 25, 2025, the Court denied Plaintiffs' motion for leave to file a *sur-reply* brief and scheduled oral arguments for March 21, 2025, on the motion to dismiss. (Doc. 19). On March 21, 2025, the Court held oral arguments.

(Doc. 21). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 10; Doc. 11; Doc. 14; Doc. 15; Doc. 21).

## II.    LEGAL STANDARDS

### A.    MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B. 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

Defendants move to dismiss all Nine Counts of the complaint. Defendants argue that all Nine Counts should be dismissed because Plaintiffs lack standing. (Doc. 11, at 27-28). Regarding Defendants' First Amendment claims, Defendants assert that Count I (Plaintiffs' First Amendment speech claim) and Count II (Plaintiffs' First Amendment assembly claim) should be dismissed because Martz Hall was a nonpublic forum during the College Fair and Defendants had every right to exclude Plaintiffs from an invite-only event. (Doc. 11, at 12-17). Relatedly, Defendants move to dismiss Count III (Plaintiffs' First Amendment retaliation claim) on the grounds that Plaintiffs were not exercising their First Amendment rights by attending and recording the College Fair, and as such, Defendants could not have retaliated against Plaintiffs for exercising their First Amendment Rights. Regarding Plaintiffs' use of force claims, Defendants move to dismiss Count IV (Plaintiffs' Fourth Amendment Claim) and Count VI (Plaintiffs substantive due process claim) on the basis that the force Defendants asserted against Plaintiffs was insufficient to implicate either the Fourth Amendment or

substantive due process rights. (Doc. 11, at 18, 21-23). Defendants further posit that Count V (Plaintiffs' equal protection claim) should be dismissed because the complaint fails to allege Plaintiffs were treated differently than a similarly situated group (Doc. 11, at 18-21). Defendants move to dismiss Count VI (Plaintiffs' Eighth Amendment claim) on the basis that the Eighth Amendment does not apply to the facts alleged in the complaint. (Doc. 11, at 23). Similarly, Defendants move to dismiss Count VIII (Plaintiffs' civil conspiracy claim) on the grounds that 42 U.S.C. § 1985 does not apply to the complaint. (Doc. 11, at 24-26). Finally, Defendants ask the Court to dismiss Count IX (Plaintiffs' state law claim) in the event that the Court dismisses all federal claims. (Doc. 11, at 26-27). The Court will address each of these grounds for dismissal in turn. For the reasons outlined below, the Court will **GRANT** Defendants motion to dismiss Counts VI, VII, and VIII, and will **DENY** Defendants' motion to dismiss Counts I, II, III, IV, V, and IX. (Doc. 10).

A. STANDING

Defendants submit that Plaintiffs' complaint should be dismissed because they have failed to clearly allege an injury in fact. (Doc. 11, at 23-24). Defendants contend that Plaintiffs have not clearly identified the harm or injuries they suffered, and further, that the Student Plaintiffs did not suffer injury because they were allowed to attend the College Fair despite not being invited, and that the Student Plaintiffs could have attended other college fairs. (Doc. 11, at 23-24; 27-28). Defendants also argue that the complaint fails to identify any injuries to Plaintiff Herbert and Plaintiff Martin. (Doc. 11, at 27-28). Defendants further posit that the Plaintiffs could not have suffered injuries because Gillingham received an invitation to the College Fair, but the Plaintiffs themselves did not. (Doc. 15, at 8-9).

Plaintiffs respond that they have sufficiently alleged an injury in fact because 1) their constitutional injuries are recognized types of injury, 2) the complaint alleges Plaintiffs were humiliated and assaulted at the College Fair, and 3) other students were not restricted to only thirty minutes at the College Fair. (Doc. 14, at 38-40). Plaintiffs further assert that the fact that the Plaintiffs could have attended other college fairs is irrelevant to them being denied access to the College Fair at issue. (Doc. 14, at 38-40). In response to Defendants' standing arguments related to Plaintiff Herbert and Plaintiff Martin, Plaintiffs clarify that these individuals attended the College Fair as chaperones and as such, they were subject to the same treatment and injury as the Student Plaintiffs. (Doc. 21, at 22).

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, Inc., 454 U.S. 464, 471 (1982). "As an incident to the elaboration of this bedrock requirement, this Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll.*, 454 U.S. at 471. "The standing doctrine defines what is a 'case' or 'controversy.'" *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 320–21 (3d Cir. 2018). As explained by the Third Circuit:

> Article III standing requires (1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) a likelihood that a favorable decision will provide redress for the injury." Injury in fact is 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'

> *Long*, 903 F.3d at 321 (citations omitted).

"An injury is concrete when it is 'real' and 'not abstract,' with a 'close relationship to harms traditionally recognized as providing a basis for a lawsuit in American courts,' including

'harms specified by the Constitution itself.'" *Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 355 (3d Cir. 2024) (citations omitted).

When Plaintiffs allege injury to themselves and not others, the particularity requirement is met. *See Associated Builders & Contractors W. Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 288 (3d Cir. 2023) ("because Plaintiffs allege an injury to themselves, not someone else, there is no particularity issue"); *see also Rd.-Con, Inc.*, 120 F.4th at 355 (stating the same). When a plaintiff adequately alleges that a defendant violated their constitutional rights, that violation is a sufficient injury for purposes of standing. *See Rd.-Con, Inc.*, 120 F.4th at 355, 358 (finding "Plaintiffs' [First Amendment] injury is concrete because it is a 'harm to their legally protected First Amendment interest' in voluntary association" and further explaining "'discriminatory classification is itself a penalty,' and thus 'qualifies as an actual injury for standing purposes, where a citizen's right to equal treatment [under the Equal Protection Clause] is at stake'" (citations omitted)); *see also Associated Builders & Contractors W. Pennsylvania*, 81 F.4th at 288 (stating "a plaintiff has standing to bring a First Amendment claim when he suffers injury to his legally protected First Amendment interest—e.g., when the state forces him to speak, or associate").

Defendants' argument that the Student Plaintiffs were not injured because they were allowed to attend the College Fair and could have attended other college fairs fails. The complaint alleges that Defendants' conduct and discriminatory actions violated the Student Plaintiffs' constitutional rights and that the Student Plaintiffs were only allowed to attend the College Fair after being subject to discriminatory attempts to exclude them. (Doc. 1, ¶¶ 84, 95, 109-112, 117-137, 144-149). An injury is considered concrete when it is a "'harm[] specified by the Constitution itself.'" *Rd.-Con, Inc.*, 120 F.4th at 355 (quoting *TransUnion LLC*

*v. Ramirez*, 594 U.S. 413, 425 (2021)). Further, the complaint alleges that the Student Plaintiffs were allowed to attend the College Fair, but that they were only allowed to stay for thirty minutes with limited access to their phones, a restriction not imposed on other attendees of the College Fair. (Doc. 1, ¶¶ 145-148). Discriminatory treatment is itself a recognized injury which can confer standing. *See Rd.-Con, Inc.*, 120 F.4th at 358 ("a 'discriminatory classification is itself a penalty,' and thus 'qualifies as an actual injury for standing purposes'" (quoting *Hassan v. City of New York*, 804 F.3d 277, 290 (3d Cir. 2015), *as amended* (Feb. 2, 2016)); *see also Burnett*, 2014 WL 3109963, at *4 (E.D. Pa. July 8, 2014) ("an allegation of discriminatory treatment confers standing").

Defendants' argument that the complaint fails to identify injuries to Plaintiff Herbert and Plaintiff Martin also fails because the complaint repeatedly alleges constitutional injuries to "Plaintiffs" as a whole, not just the Student Plaintiffs. (Doc. 1, ¶¶ 84, 95, 107, 109-112, 117-123, 125-131, 133-137, 139-143, 145-149). Plaintiffs clarified during oral argument that Plaintiff Herbert and Plaintiff Martin attended the College Fair as chaperones and as such, they were subject to the same mistreatment as the Student Plaintiffs. (Doc. 21, at 22). Constitutional injuries, such as injuries based on violations of a plaintiff's rights under the First Amendment and Equal Protection Clause, are recognized injuries for standing purposes. *See Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th at 355, 358. As such, the complaint adequately alleges injuries suffered by all Plaintiffs.

Finally, Defendants' argument that Gillingham is the only party with standing because it is the only plaintiff to potentially have received an an invitation to the College Fair also fails. (Doc. 15, at 8-9). While it is true that Gillingham received the invitation to attend the College Fair, and not each individual Student Plaintiff and their parents/chaperones, the

complaint provides that the College Fair was an event intended for and attended by individual students and teachers from schools who received the invitations. (Doc. 1, ¶¶ 5-6, 70, 80, 118, 126, 146). Therefore, despite any issue as to who directly receive the invitation, Plaintiffs have alleged Defendants' discriminatory conduct targeted at Plaintiffs before and during the College Fair violated their constitutional rights. (Doc. 1, ¶¶ 80, 118-121, 126-129, 145-146). This all considered, Defendants motion to dismiss on the basis of standing is **DENIED**. (Doc. 10).

## B.  FIRST AMENDMENT SPEECH AND ASSEMBLY CLAIMS (COUNTS I AND II)

Count I of the complaint alleges violations of Plaintiffs' First Amendment right to freedom of speech[2] and Count II of the complaint alleges violations of Plaintiffs' First Amendment right to assembly. (Doc. 1, ¶¶ 116-131). Although these are separate Counts, Defendants move to dismiss Count I and Count II on the same basis – that because Martz Hall was a nonpublic forum, Defendants had every right to exclude Plaintiffs from the College Fair. (Doc. 11, at 12-17). According to Defendants, Martz Hall was a nonpublic forum because 1) school property is generally considered nonpublic; 2) the College Fair was an invitation-only event to which Plaintiffs were not invited; and 3) the College Fair at Martz Hall followed a longstanding, viewpoint neutral policy of only inviting "public school districts affiliated with the IU" to the College Fair. (Doc. 11, at 14-15). Regarding this policy, the

---

[2] The complaint alleges that Defendants violated Plaintiffs' free speech rights by both by restricting their attendance and ability to videorecord at the College Fair. (Doc. 1, ¶ 117). Defendants only dispute Plaintiffs' assertions that they had a right to videorecord the College Fair by arguing "[the College Fair] was a nonpublic forum to which by their own admission, Plaintiffs were not invited." (Doc. 14, at 17). Because the Defendants do not raise the issue of whether Plaintiffs had a First Amendment right to record at the College Fair outside of their arguments that Plaintiffs did not have the right to attend the College Fair, the Court does not need to address the extent to which Plaintiffs had a First Amendment right to video record for purposes of the instant motion.

Defendants cite Pennsylvania law to aver that Gillingham as a charter school cannot be considered a "school district." (Doc. 11, at 15-16). They further argue that although Gillingham is affiliated with Intermediate Unit 29 ("IU 29"), it is not a member the IU 29. (Doc. 11, at 15-16). As such, the Defendants posit that Gillingham is not a "public school district affiliated with the IU" and Plaintiffs were excluded pursuant to a viewpoint neutral long-standing policy. (Doc. 11, at 14-16). As to Count II, Defendants assert that their actions would not have violated Plaintiffs' assembly rights even in a public forum. (Doc. 11, at 16-17). In response, Plaintiffs contend that they sufficiently allege Martz Hall was a "limited" or "designated" public forum for the purposes of the College Fair and as such, Defendants unconstitutionally limited Plaintiffs' speech and assembly at Martz Hall. (Doc. 14, at 15-19; Doc. 21, at 16-17). Ultimately, and importantly for purposes of consideration of the instant motion, Plaintiffs assert that Defendants engaged in unconstitutional viewpoint discrimination *regardless* of forum. (Doc. 14, at 19-21) (emphasis added).

The First Amendment reads in relevant part: "Congress shall make no law. . . abridging the freedom of speech. . . or the right of the people to peaceably to assemble." U.S. CONST. amend. I. The First Amendment limits the government's ability to restrict individuals' speech and assembly on government-controlled property, but the extent of those limits "differ[s] depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983). Courts apply the same forum analysis to both speech and assembly claims. *See Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366, 1369 (3d Cir. 1990). "When a First Amendment free speech challenge arises from a restriction on speech on government owned or controlled property. . . the classification of the forum determines the contours of the First Amendment rights that a court recognizes when reviewing the

challenged governmental action." *Galena v. Leone,* 638 F.3d 186, 197 (3d Cir. 2011). Courts recognize "three categories of public forums: (1) the traditional public forum; (2) the designated public forum; and (3) the limited public forum [or nonpublic forum]."[3] *Galena*, 638 F.3d at 197. Restrictions on speech in traditional public forums and designated public forums are subject to strict scrutiny, such that "the government may enact reasonable time, place, and manner restrictions on speech, but any restrictions on the content of speech must be tailored narrowly to serve a compelling government interest." *Galena*, 638 F.3d at 198*; see also Porter v. City of Philadelphia*, 975 F.3d 374, 387 (3d Cir. 2020). "A nonpublic forum is entitled to lesser First Amendment protection than the other two forums." *Porter*, 975 F.3d at 387. In a nonpublic forum, "[c]ontent-based restrictions on speech are valid so long as they are reasonable in light of the purpose of the forum and viewpoint neutral." *Porter*, 975 F.3d at 387.

---

[3] Federal courts have expressed confusion over the concept of a "limited public forum." *See Galena*, 638 F.3d at 197 (stating "[t]here appears to be some inconsistency in federal courts' opinions, even those of the Supreme Court, as to whether a limited public forum is a separate category or a subset of a designated public forum with a third category of forums being "nonpublic forums"). The Third Circuit has at times taken the view that because the Supreme Court has used the terms "limited public forum" and "nonpublic forum" interchangeably, the two concepts should be treated the same. *See Nat'l Ass'n for Advancement of Colored People v. City of Philadelphia*, 834 F.3d 435, 441 (3d Cir. 2016) (stating "[t]here has been some confusion about whether there are any practical differences between nonpublic and limited public forums. However, the Supreme Court recently 'has used the term[s] ... interchangeably ...[,] thus suggesting that these categories of forums are the same'") (quoting *Galena*, 638 F.3d at 197); *see also Porter v. City of Philadelphia*, 975 F.3d 374, 387 (3d Cir. 2020) (stating "[t]he 'nonpublic forum' has also sometimes been referred to as the 'limited public forum,' creating confusion about whether there is a difference between these two classifications" and noting that "the Supreme Court recently has used the terms 'limited public forum' and 'nonpublic forum' interchangeably, suggesting that, if there is a distinction, these two categories are afforded the same treatment"). Because Plaintiffs clarified during oral argument that they are asserting Martz Hall was a designated public forum during the College Fair, the Court does not need to address whether a limited public forum is a subcategory of nonpublic forum or designated public forum. (Doc. 21, at 16).

However, viewpoint discrimination is unconstitutional regardless of the kind of property or forum at issue. *See Ne. Pennsylvania Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 432 (3d Cir. 2019)*; Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 653 F.3d 290, 296 (3d Cir. 2011). A plaintiff adequately alleges viewpoint discrimination if the complaint alleges a governmental entity discriminated against a group's "message and what its group and members believed." *Ne. Pennsylvania Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 158 F. Supp. 3d 247, 256 (M.D. Pa. 2016); *see also Liberty & Prosperity 1776, Inc. v. Corzine*, 720 F. Supp. 2d 622, 634 (D.N.J. 2010) ("at [the motion to dismiss] stage, the Court need only find that viewpoint discrimination [] is a plausible inference from the facts").

Because this Court finds that the complaint sufficiently alleges viewpoint discrimination, the Court will not determine what type of forum Martz Hall was at the time of the College Fair at this juncture. *See Pittsburgh League of Young Voters Educ. Fund*, 653 F.3d at 296 (declining to address forum type because plaintiff adequately established viewpoint discrimination); *see also Ne. Pennsylvania Freethought Soc'y*, 158 F. Supp. 3d at 255 (declining to determine forum type in the pleadings stage because the complaint sufficiently alleged viewpoint discrimination). The complaint alleges that the Defendants have long opposed Gillingham as a charter school and as Defendants noted during oral argument, support for charter schools is a controversial political issue. (Doc. 1, ¶¶ 12-19, 119, 129; Doc. 21, at 20-21). Public school officials may not discriminate against specific political viewpoints. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969). The complaint alleges that Defendants discriminated against Plaintiffs based on their viewpoint regarding Gillingham. (Doc. 1, ¶¶ 12-19, 109, 118-121, 129).

Defendants maintain they acted in accordance with a viewpoint neutral policy restricting access to the College Fair to "school districts" affiliated with IU 29, arguing that Gillingham cannot be considered a public school district, as it is not a member of Intermediate Unit 29, but is merely allowed to purchase services from the IU. (Doc. 11, at 15-16; Doc. 15, at 6). Defendants point to two Pennslvyania statutes relevant to intermediate units in support of their argument that Pennsylvania law distinguishes school districts from charter schools, arguing that the statutory language demonstrates that charter schools are not members of the intermediate unit.[4] According to Defendants, Plaintiffs have not alleged viewpoint discrimination because their actions were based on a viewpoint neutral policy of excluding students from the College Fair who do not attend public school districts affiliated with IU 29. (Doc. 11, at 15-16; Doc. 15, at 6)

At this stage of the litigation, this argument is unavailing. According to the complaint, Martz Hall was opened to all public school students in Schuylkill County in addition to students from two private schools.[5] (Doc. 1, at ¶¶ 71-77, 82, 118). The complaint further

---

[4] Defendants cite to 24 Pa. Stat. Ann. § 17-1725-A(a)(4), which states that an "intermediate unit may not charge [a] charter school more for any service than it charges the constituent districts of the intermediate unit." Defendants also point to 24 Pa. Stat. Ann. § 9-910-A(a), which states that members of the board of directors for an intermediate unit are chosen from "members of the boards of school directors of school districts comprising the intermediate unit."

[5] The Plaintiffs' brief in opposition also claims that students from Schuylkill Technology Center, a technical school, were invited to attend the College Fair. (Doc. 14, at 9). This issue was also raised at oral argument. (Doc. 21, at 18-19). Notably, the complaint itself does not allege this technical school was invited. An exhibit attached to the complaint shows someone from the Schuylkill Technology Center sent the invitation to the College Fair to Gillingham. (Doc. 1-4). However, the complaint does not allege that any students from the Schuylkill Technology Center were invited to the College Fair or assert that the inclusion of email addresses from Schuylkill Technology Center on the exhibit establishes that students from Schuylkill Technology Center must have been invited to the College Fair. As such, the

alleges that the Defendants banned "*only* Plaintiffs from attending and recording the College Fair" on the basis of their controversial viewpoints regarding Gillingham. (Doc. 1, at ¶¶ 119-120, 126, 129). Thus, Defendants' argument that they acted pursuant a viewpoint neutral policy is contradicted by the complaint. Allegations that a government entity "unevenly enforced its policies" support an allegation of viewpoint discrimination. *See Ne. Pennsylvania Freethought Soc'y*, 158 F. Supp. 3d at 255. Plaintiffs have thus sufficiently alleged that Defendants violated their First Amendment speech and assembly rights, and Defendants' motion to dismiss Counts I and II is **DENIED**. (Doc. 10).

C.  First Amendment Retaliation Claim (Count III)

In Count III, Plaintiffs allege Defendants violated their First Amendment rights by retaliating against them for exercising their First Amendment rights of freedom of speech and assembly. (Doc. 1, ¶¶ 132-137). Defendants move to dismiss Count III on the basis that Plaintiffs did not have a First Amendment right to speech and assembly at the College Fair and thus, Plaintiffs could not be retaliated against for exercising their First Amendment rights. (Doc. 11, at 17). Plaintiffs counter this argument by averring that Plaintiffs did have valid First Amendment right to speech and assembly at the College Fair and that Defendants retaliated against them for exercising these rights by asking all the college representatives at the College Fair to sit on the upper lobby bleachers and watch Plaintiffs walk around an empty College Fair in a "fishbowl" environment. (Doc. 14, at 21-22).

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech" *Nieves v. Bartlett*, 587 U.S. 391, 398

---

Court will not consider this allegation for purposes of the motion to dismiss. *See Brooks*, 707 F. Supp. 3d at 468.

(2019). According to the Third Circuit, to establish a First Amendment retaliation claim, "a plaintiff 'must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.' 'The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation.'" *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (citations omitted). To survive a motion to dismiss, "[a] plaintiff must identify the protected activity that allegedly caused the retaliation." *Stascavage v. Borough of Exeter*, No. 3:11-CV-0772, 2012 WL 2885002, at *6 (M.D. Pa. July 13, 2012). A complaint must also allege "sufficient facts describing when and how Defendants allegedly retaliated against Plaintiffs to survive a motion to dismiss." *Davis v. Fox*, No. 3:12-CV-1660, 2014 WL 6463778, at *4 (M.D. Pa. Nov. 17, 2014). Finally, the complaint must allege facts that "prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Courts will deny dismissal where complaints allege both a pattern of antagonism and suspicious temporal proximity. *See Davis*, 2014 WL 6463778, at *5 (denying a motion to dismiss where the complaint alleged both retaliation two weeks after the protected conduct in question and "a pattern of antagonism that makes it plausible that Plaintiffs' purported protected activity was a substantial factor in the retaliatory conduct alleged").

Defendants only contest Count III on the grounds that the complaint fails to allege Plaintiffs engaged in protected conduct. (Doc. 11, at 17). Given that the Court has determined that Plaintiffs adequately alleged their speech and assembly claims (Counts I and II), this

argument fails. Defendants do not address the other pleading requirements of a retaliation claim. As such, the Defendants' motion to dismiss Count III is **DENIED**. (Doc. 10).

    D. FOURTH AMENDMENT CLAIM (COUNT IV)

In Count IV of the complaint, Plaintiffs allege violations of their Fourth Amendment right to be free of unreasonable seizure. (Doc. 1, ¶¶ 138-143). Plaintiffs argue "the PASD Defendants seized Plaintiffs [in violation of the Fourth Amendment] by placing their hands upon them and restricting their movements." (Doc. 14, at 23-24). Defendants move to dismiss Plaintiffs' Fourth Amendment claim, arguing that the force alleged in the complaint does not constitute a seizure for purposes of the Fourth Amendment. (Doc. 11, at 18). According to the Defendants, Plaintiffs "were merely ushered to another area of the gymnasium." (Doc. 11, at 18). Further, at oral argument, Defendants cited *Gottlieb ex rel. Calabria v. Laurel Highlands School District*, in support of their assertion that traditional Fourth Amendment standards do not because of this matter's public-school setting. 272 F.3d 168, 171 (3d Cir. 2001). (Doc. 21, at 39-49). Plaintiffs contend that *Gottlieb* did not apply due to the Plaintiffs not being the students of the Defendants. (Doc. 21, at 40-41).

The Third Circuit has "recognized that public schools are in a 'unique constitutional position,' because '[o]nce under the control of the school, students' movement and location are subject to the ordering and direction of teachers and administrators.'" *Gottlieb*, 272 F.3d at 171 (quoting *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995)). In public schools, "[t]he 'momentary use of physical force by a teacher in reaction to a disruptive or unruly student does not effect a 'seizure' of the student under the Fourth Amendment,' and therefore 'is a scenario to which the Fourth Amendment does not textually

or historically apply.'" *Gottlieb*, 272 F.3d at 172 (quoting *Kurilla v. Callahan*, 68 F. Supp. 2d 556, 563 (M.D. Pa. 1999)).

Courts in the Third Circuit vary in their application of *Gottlieb* outside of the traditional classroom context. Courts in the Eastern District of Pennsylvania applied *Gottlieb* to dismiss Fourth Amendment claims where the defendant was a school official, and the plaintiff was a non-student. *See e.g., Easley v. City of Philadelphia*, No. CIV.A. 14-2699, 2015 WL 1408910, at *2 (E.D. Pa. Mar. 27, 2015) ("though [plaintiff] was not a student, he avers that the Defendant [] was a teacher and at all times acted within the course and scope of his employment"); *see also e.g., Johnson v. Sch. Dist. of Philadelphia*, No. CIV. A. 06-4826, 2008 WL 3927381, at *5 (E.D. Pa. Aug. 21, 2008) (dismissing a non-student's Fourth Amendment claim against a school official in consideration of public policy of maintaining school safety). More recently, a court in the Eastern District found that *Gottlieb*'s Fourth Amendment analysis cannot apply where a plaintiff is not under the control of a school. *See Rodriguez Fuentes v. Sch. Dist. of City of Philadelphia*, No. CV 17-3736, 2019 WL 1505861, at *4 (E.D. Pa. Apr. 4, 2019) ("In contrast to the plaintiff in *Gottlieb*, the plaintiff in the present case was not under the control of his school at the time of the incident. As a result, plaintiff here experienced the type of detention or physical restraint is that is required to effectuate a seizure.")

Central to the analysis in *Gottlieb* is the idea that the plaintiff is subject to the control of the school at the time of the incident. *See Rodriguez Fuentes*, 2019 WL 1505861, at *4; *see also Gottlieb*, 272 F.3d at 171 (stating "[c]ourts have recognized that public schools are in a 'unique constitutional position,' because '[o]nce under the control of the school, students' movement and location are subject to the ordering and direction of teachers and administrators.'" (internal citations omitted). While *Gottlieb* involved physical force by a

20

teacher in reaction to a disruptive or unruly student, it did not contemplate the circumstances alleged here. (Doc. 1, ¶¶ 3-8. 22-64, 93-102). As such, the Court concludes that *Gottlieb* does not foreclose Plaintiffs' Fourth Amendment claim at this juncture, as Plaintiffs are not Defendants' students, and the College Fair was not a traditional school setting.

The Court now turns to Defendants' arguments that this Count fails under general Fourth Amendment principles. The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

A seizure "can take the form of 'physical force' or a '"show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Further, a seizure may occur if there is either "(a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). The Third Circuit has held that momentarily grabbing or pushing an individual is insufficient to constitute a seizure. *See Smith v. Dep't of Gen. Servs. of PA.*, 181 F. App'x 327, 330 (3d Cir. 2006) Further, the use of force does not rise to "the level of a seizure [where plaintiff's] movement was not occluded" or where the force applied is minimal and only briefly restricts a plaintiff's movement. *Ashton v. City of Uniontown*, 459 F. App'x 185, 189 (3d Cir. 2012). More severe uses of force that "temporarily immobilizes or causes injury" do constitute seizures. *See e.g.*, *Gross v. Cairo*, No. 1:21-CV-2188, 2022 WL 4279707, at *2 (M.D. Pa. Sept. 15, 2022), *aff'd*,

21

No. 22-2920, 2023 WL 8646265 (3d Cir. Dec. 14, 2023) (finding a seizure occurred where defendant "struck [a pregnant plaintiff in the stomach] with enough force to cause severe pain and hemorrhaging"); *see also e.g.*, *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (a seizure occurred where an officer grabbed a plaintiff "by the wrist and neck, slam[ed] him back into the wall of the vacant storefront, and [took] him to the ground").

The Court finds that Plaintiffs have adequately alleged claims of unlawful seizure. Specifically, the complaint contains allegations of the PASD Superintendent "grabbing [Plaintiff C.H.'s] arm, forcing his arm down, and attempt[ing] to seize his phone from his hand," "attempt[ing] to physically remove Plaintiffs from the gymnasium floor," "physically block[ing]" Plaintiffs, "push[ing Plaintiff S.K.] back and forcefully "restrain[ing] him by grabbing him on his shoulders." (Doc. 1, ¶¶ 94-95, 97). The complaint also states that Plaintiffs believed they were "being detained by. . . Defendants Peters and Stasulli." (Doc. 1, ¶ 100). Plaintiffs allege more extensive and prolonged physical contact than just being struck once in the back, slapped and briefly grabbed by the collar, or having their arm momentarily grabbed. (Doc. 1, ¶¶ 94-95, 97). At this early stage of the litigation, the Court finds that the complaint sufficiently alleges that Defendants used force to restricted Plaintiffs' movements such that Plainitffs were seized in violation of the Fourth Amendment. Defendants' motion to dismiss Count IV is **DENIED**. (Doc. 10).

E. SUBSTANTIVE DUE PROCESS CLAIM (COUNT VI)

Count VII is brought by Plaintiffs Nagle, Ulrich, Martin, B.B., K.B., M.B., S.C., C.H., S.K., J.K., S.M., and K.R. (collectively, "Excessive Force Plaintiffs") against PASD Superintendent, and alleges violations of the Fourteenth Amendment substantive due process right to be free from excessive force. (Doc 1, ¶¶ 150-159). Defendants argue that none of the

physical contact in the complaint was severe enough to sustain this claim. (Doc. 11, at 17-18).
Plaintiffs respond that the level of force was sufficient to raise substantive due process
concerns because the "use of physical force against Plaintiffs was excessive and egregious."
(Doc. 14, at 33-34).

The Fourteenth Amendment reads in relevant part: "nor shall any State deprive any
person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.
The Supreme Court has long held that this provision "'guarante[es] more than fair process,'
and [] cover[s] a substantive sphere as well, 'barring certain government actions regardless of
the fairness of the procedures used to implement them.'" *Cnty. of Sacramento v. Lewis*, 523 U.S.
833, 840 (1998). "Noting its 'reluctan[ce] to expand the concept of substantive due process,'
the Supreme Court has established the 'more-specific-provision rule.'" *Betts v. New Castle Youth
Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833,
842 (1998)). "Under this rule, 'if a constitutional claim is covered by a specific constitutional
provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the
standard appropriate to that specific provision, not under the rubric of substantive due
process.'" *Betts*, 621 F.3d at 260 (quoting *United States v. Lanier*, 520 U.S. 259, 272 (1997)).
However, when assessing uses of force, the Supreme Court has held that where a use of force
does not constitute a seizure, substantive due process applies. See *Cnty. of Sacramento*, 523
U.S. at 843 ("Substantive due process analysis is therefore inappropriate in this case only if
respondents' claim is 'covered by' the Fourth Amendment. It is not. The Fourth Amendment
covers only 'searches and seizures.' Neither of which took place here"). According to the
Third Circuit, this means when plaintiffs cannot "establish that he [were] seized as required

for a Fourth Amendment violation, [their] excessive force claim is then subject to a substantive due process analysis." *Ashton*, 459 F. App'x at 189–90.

"To establish a substantive due process claim, a plaintiff must demonstrate: 1) an actor engaged in conduct under color of state law; 2) a deprivation of a protected liberty interest by that conduct; and 3) the deprivation shocks the conscience." *Ashton*, 459 F. App'x at 189. Even if a plaintiff sustains an injury and a defendant's use of force is improper, a substantive due process claim will fail if it is "neither egregious nor conscience shocking under the circumstances." *Smith*, 181 F. App'x at 331. The Third Circuit has "consistently held that only the most egregious official conduct shocks the conscience." *Ashton*, 459 F. App'x at 189. "The pertinent inquiry is 'whether the force applied caused injuries so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Kurilla v. Callahan*, 68 F. Supp. 2d 556, 564 (M.D. Pa. 1999) (quoting *Jones v. Witinski*, 931 F. Supp. 364, 369 (M.D. Pa. 1996)). Not all allegations of assault rise to the level of conscious shocking conduct. *See e.g.*, *Ashton*, 459 F. App'x at 190 (deciding that a parking officer striking a plaintiff in the back "with a closed fist while inappropriate, does not rise to conscience shocking behavior"); *Fields*, 2016 WL 7324594, at *7 (slapping a plaintiff and briefly grabbing his collar did not shock the conscious). Allegations of serious physical injury caused by assault are sufficient as allegations of conscious shocking conduct if the injuries are severe enough. *See e.g.*, *Gross*, 2022 WL 4279707, at *3 (denying dismissal of a substantive due process claim where a pregnant woman was punched in the stomach which caused severe injury and hemorrhaging).

Here, the complaint alleges that the PASD Superintendent forcefully grabbed, shoved, restrained, and bumped Excessive Force Plaintiffs. (Doc. 1, ¶¶ 94-99). This conduct is defined as "assaults and batteries" and the complaint alleges that because of these "assaults and batteries," Excessive Force Plaintiffs "suffered physical injuries." (Doc. 1, ¶¶ 157, 159). The complaint does not define or describe these injuries. Allegations of assault with unspecified or minimal injuries are insufficient to meet the shocks the conscious standard. *See Ashton*, 459 F. App'x at 190 (finding that striking a plaintiff in the back "with a closed fist while inappropriate, does not rise to conscience shocking behavior"); *see also Fields*, 2016 WL 7324594, at *7 (providing that slapping and grabbing a plaintiff's collar does not shock the conscious). Here, because Excessive Force Plaintiffs' injuries are not defined, the Court finds that the complaint is insufficient in its allegations of conscious-shocking behavior. *See Ashton, 459 F. App'x at 190* (affirming dismissal of a substantive due process claim because plaintiff failed to alleged a severe enough use of force or "ongoing pain or injury"). As such, Defendants' motion to dismiss Count VI of the complaint is **GRANTED**. (Doc. 10).

F. EQUAL PROTECTION CLAIM (COUNT V)

In Count V of the complaint, Plaintiffs allege violations of the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1, ¶¶ 144-149). Defendants move to dismiss Count V, arguing: 1) Plaintiffs had no right to attend the College Fair because they were not invited, 2) "it was well within the purview of the Defendants to rescind a mistakenly extended invitation," and 3) Plaintiffs were not treated differently than similarly situated individuals. (Doc. 11, at 20-21). Regarding their third point, Defendants argue that the Plaintiffs were not similarly situated to the students who attended the College Fair because Plaintiffs were not invited and were not students from a "public school district" affiliated with IU 29. (Doc. 11,

at 20-21). According to Defendants, Plaintiffs were similarly situated to students from the two private schools whom the Defendants claim did not attend the College Fair. (Doc. 11, at 20-21). Plaintiffs counter that they were similarly situated to the attendees of the College Fair, and "Defendants intentionally discriminated against Plaintiffs because of their status as public charter school students." (Doc. 14, at 28-33). Plaintiffs assert that they were similarly situated to the attendees of the College Fair because they were public-school students and teachers from a school affiliated with IU 29. (Doc. 14, at 28-33). Plaintiffs further aver that Defendants intentionally discriminated against Plaintiffs as charter school students and teachers without a rational basis for doing so. (Doc. 14, at 28-33). Defendants and Plaintiffs agree that the relevant standard for this case is the class of one theory. (Doc. 11, at 20; Doc. 14, at 24).

The Equal Protection Clause of the Fourteenth Amendment reads: "nor shall any State. . . [d]eny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. While assessing equal protection claims, courts are particularly concerned with disparate treatment that "burdens a fundamental right [or] targets a suspect class." *Romer v. Evans*, 517 U.S. 620, 631 (1996). If neither a fundamental right nor suspect class are targeted, the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

To successfully plead a violation of the Equal Protection Clause under the class of one theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

"Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). It is insufficient for a plaintiff to allege "commonality at a very general level." *Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025, at *6 (3d Cir. Mar. 1, 2022). However, similarly situated does not mean identically situated. *See Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F. Supp. 2d 547, 567 (M.D. Pa. 2013); *see also Thomas v. Coopersmith*, No. CIV.A. 11-7578, 2012 WL 3599415, at *5 (E.D. Pa. Aug. 21, 2012); *Montanye v. Wissahickon Sch. Dist.*, 327 F. Supp. 2d 510, 519 (E.D. Pa. 2004). Dismissal may be inappropriate if the determination of whether a plaintiff is similarly situated to others requires a fact-intensive inquiry. *See Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013); *see also McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 648 (M.D. Pa. 2014).

The Court finds that Plaintiffs have sufficiently alleged their Equal Protection claim. (Doc. 1, ¶¶ 145-146). The relevant equal protection issue is not whether Plaintiffs had an affirmative right to attend the College Fair or whether Defendants have a right to rescind a mistakenly sent invitation. (Doc. 11, at 20-21). Rather, the relevant inquiry is whether the complaint sufficiently alleged that Defendants "intentionally treated [Plaintiffs] differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564. Further, the complaint alleges the Plaintiffs were similarly situated to the attendees of the College Fair as students and teachers from a public school in Schuylkill County affiliated with IU 29. (Doc. 1, ¶¶ 74-75, 82, 145-146). The complaint further alleges that Plaintiffs were invited to the College Fair before being targeted due to "the status of Plaintiffs as charter school students/teachers instead of being traditional

school district students/teachers like PASD." (Doc. 1, ¶¶ 146-148). At this stage of the litigation, the Court thus finds Plaintiffs have sufficiently alleged they were similarly situated to the attendees of the College Fair, even if they were not identically situated.

Defendants do not explicitly contest the intentionality element of the class of one standard. As such, the Court will not address intentionality at this time. Defendants' briefing also does not clearly address the rational basis component of the class of one theory. At oral argument, Defendants asserted that they had an important government interest in following PASD's alleged long-standing policy of only inviting "school districts" that are members of IU 29 to the College Fair. (Doc. 21, at 15). Plaintiffs noted at oral argument that they interpreted Defendants' citation to this longstanding policy as a proposed rational basis for purposes of equal protection. (Doc. 21, at 37-38).

At the motion to dismiss stage, the Court is required to accept the allegations in the complaint as true and will not examine extraneous evidence on the rationality of disparate treatment at this juncture. *See Archer v. York City Sch. Dist.*, No. 1:13-CV-2826, 2015 WL 13806768, at *11 (M.D. Pa. Feb. 18, 2015). The complaint alleges that the school district was not following a policy of only inviting students from "public school districts" that were members of IU 29, but rather, invited all public-school students and teachers from Schuylkill County to the College Fair along with students from two private schools. (Doc. 1, ¶¶ 5, 71-79, 82, 118, 126, 145). According to the complaint, Defendants then attempted to exclude Plaintiffs from the College Fair due to long standing animus towards Gillingham. (Doc. 1, ¶¶ 12-19, 119, 129, 146). While there may be "contrary evidence indicating [] rationality," the Court will not look beyond the facts presented in the complaint in this early stage. Accordingly, Defendants' motion to dismiss Count V is **DENIED**. (Doc. 10).

G. EIGHTH AMENDMENT CLAIM

In Count VII of the complaint, Plaintiffs allege violations of the Eighth Amendment. (Doc. 1, ¶¶ 160-164). Defendants argue that Plaintiffs' Eighth Amendment claims should be dismissed because the "Eighth Amendment is inapplicable to the facts alleged by Plaintiffs." (Doc. 11, at 23). Plaintiffs, citing no caselaw, allege that the Defendants violated the Eighth Amendment "based upon the PASD Defendants' indiscriminate subjection of extreme humiliation on Plaintiffs at the College Fair." (Doc. 14, at 34-35). The Court agrees with Defendants that the Eighth Amendment does not apply in this case.

The Eighth Amendment reads in relevant part: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In *Ingraham v. Wright*, the Supreme Court held "the Eighth Amendment does not apply to the paddling of children as a means of maintaining discipline in public schools." 430 U.S. 651, 664 (1977). The Court reasoned that the Eighth Amendment "was designed to protect those convicted of crimes" and except for very limited circumstances, such as cases of excessive fines, is to be applied exclusively in the criminal context. *Ingraham*, 430 U.S. at 664; *see also Austin v. United States,* 509 U.S. 602, 621 (1993). At the motion to dismiss stage, an Eighth Amendment claim must be dismissed where a complaint fails to assert criminal prosecution or excessive civil fines. *See Lucas v. Francisco*, No. 3:24-CV-1172, 2025 WL 769647, at *3 (M.D. Pa. Feb. 7, 2025), *report and recommendation adopted*, No. 3:24-CV-01172, 2025 WL 757130 (M.D. Pa. Mar. 10, 2025) (dismissing a claim where a student alleged being denied his full Pell Grant violated the Eighth Amendment); *see also Fenstermaker v. Nesfedder*, 802 F. Supp. 1258, 1262 (E.D. Pa. 1992), *aff'd in part, vacated in part*, 9 F.3d 1540 (3d Cir.

1993) (dismissing an Eighth Amendment claim alleging a public-school wrestling coach inflicted cruel and unusual punishment).

Here, Plaintiffs' Eighth Amendment claim is premised on Defendants having Plaintiffs "walk around the empty College Fair gymnasium floor while their peers and college/university representatives (who Plaintiffs came to see), sat, stared, and gawked from the bleachers above." (Doc. 1, ¶ 163). These facts do not describe a punishment for a criminal offense or an excessive civil fine. As such, Plaintiffs fail to state a claim under the Eighth Amendment. The Defendants' motion to dismiss Count VII is **GRANTED**. (Doc. 10).

### H.  CIVIL CONSPIRACY CLAIM

Count VIII alleges that Defendants "participated in a conspiracy to violate multiple of Plaintiffs' constitutional and civil rights." (Doc. 1, ¶¶ 165-173). Defendants move to dismiss Plaintiffs' civil conspiracy claim because 42 U.S.C. § 1985, the statute governing federal civil conspiracy claims, does not apply to the facts alleged in the complaint. (Doc. 11, at 20-22). Plaintiffs argue they sufficiently pled their claim under 42 U.S.C. § 1985 because they allege Defendants engaged in a civil conspiracy to violate Plaintiffs' civil rights. (Doc. 14, at 35-36). Plaintiffs clarified during oral argument that they are bringing their civil conspiracy claim pursuant to 42 U.S.C. § 1985(3) ("Section 1985(3)"). (Doc. 21, at 32-22).

Section 1985(3) allows plaintiffs to raise a civil conspiracy claim where they allege "two or more persons in any State or Territory conspire. . . either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In cases that do not involve racial discrimination, to a assert a claim under Section 1985(3), a "plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber*, 440 F.3d at 135.

The Supreme Court has generally disfavored basing a Section 1985(3) claim on a "class-based" theory stating "[w]hatever may be the precise meaning of a 'class' for purposes of *Griffin*'s speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993). However, it is possible to bring a Section 1985(3) claim under a class-based theory, when the conduct at issue constitutes "invidious" discrimination. *Farber*, 440 F.3d at 142. Generally, discrimination "motivated by a class's immutable characteristics" is seen as invidious. *Farber*, 440 F.3d at 142. While the Third Circuit has not foreclosed the possibility that discrimination on a mutable characteristic can be invidious, discrimination on the basis of "political affiliation surely does not qualify." *Farber*, 440 F.3d at 142. Section 1985(3) claims are subject to dismissal when the plaintiff's class definition is based on property ownership, sharing certain political beliefs while residing in the same township, and support for a political candidate. *See Miller v. Pocono Ranch Lands Prop. Owners Ass'n, Inc.*, No. CIV.A. 3:11-0317, 2012 WL 6803269, at *6 (M.D. Pa. Dec. 20, 2012), *report and recommendation adopted*, No. CIV.A. 3:11-0317, 2013 WL 83601 (M.D. Pa. Jan. 7, 2013), *aff'd*, 557 F. App'x 141 (3d Cir. 2014); *see also Friends & Residents of Saint Thomas Twp., Inc. v. Saint Thomas Dev., Inc.*, No. CIVA 1:CV-04-627, 2005 WL 6133388, at *12 (M.D. Pa. Mar. 31, 2005), *aff'd sub nom. Friends & Residents of St. Thomas Twp., Inc. v. St. Thomas Dev.*, Inc., 176 F. App'x 219 (3d

Cir. 2006); *Foglesong v. Somerset Cnty.*, No. 3:12-CV-77, 2013 WL 795064, at *11-12 (W.D. Pa. Mar. 4, 2013); *cf. Gas Drilling Awareness Coal. v. Powers*, No. 1:10-CV-1997, 2012 WL 5862471, at *4 (M.D. Pa. Nov. 19, 2012) (denying a motion to dismiss a 1985(3) claim where a group of plaintiffs alleged that they were "targeted [] due to [their] advocacy of natural gas drilling").

Plaintiffs allege that Defendants "reached an agreement and/or understanding" to violate Plaintiffs' "rights under the First Amendment, Fourth Amendment, Eighth Amendment, and the Equal Protection Clause." (Doc. 1, ¶¶ 167-168). The complaint cites to a history of animus towards Gillingham and alleges Defendants singled out Plaintiffs because of this animus. (Doc. 1, ¶¶ 12-19, 146). Plaintiffs clarified at oral argument that the relevant class for purposes of Section 1985(3) was Gillingham students and teachers. (Doc. 21, at 32). Here, based on the allegations in the complaint, the alleged animus towards Gillingham does not appear to be based on an immutable characteristic, but rather political opposition to Gillingham as a charter school. (Doc. 1, ¶¶ 12-19). Discrimination against a class based on their political stances is not considered invidious under Section 1983. See *Farber*, 440 F.3d at 142 (determining that discrimination based on political affiliation is not invidious under Section 1983); *Friends & Residents of Saint Thomas Twp., Inc.*, 2005 WL 6133388, at *12 (finding that discrimination against neighbors who shared certain political views was not invidious discrimination against a class under Section 1983(3)); *Foglesong*, 2013 WL 795064, at *12 (finding that discrimination based support for a political candidate was not invidious discrimination against a class under Section 1985(3)). Accordingly, Defendants' motion to dismiss Count VIII is **GRANTED**. (Doc. 10; Doc. 11).

I. Sᴛᴀᴛᴇ Lᴀᴡ Cʟᴀɪᴍꜱ

Finally, in Count IX of the complaint, Plaintiffs allege violations of the Pennsylvania Constitution's Equal Protection Clause. (Doc. 1, ¶¶ 174-182). Defendants argue that under 28 U.S.C. § 1367(c)(3), the Court can and should dismiss the Plaintiffs' state law claim if the Court dismisses every federal claim. (Doc. 11, at 26-27). Plaintiffs argue the Court should exercise pendant jurisdiction regardless of whether the Court retains all federal claims. (Doc. 14, at 37-38).

Federal district courts generally "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367. A court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367. Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331.

This Court has denied dismissal of Counts I, II, II, IV, and V, all of which are claims "arising under the Constitution. . . of the United States." 28 U.S.C.A. § 1331. As such, the Court has not "dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367. Accordingly, Defendants' motion to dismiss Count IX is **DENIED**. (Doc. 10).

## IV.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave

33

to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

Here, amending the complaint to revive Count VII, Plaintiffs' Eighth Amendment claim, and Count VIII, Plaintiffs' civil conspiracy claim would be futile. Amendment is futile where a constitutional or statutory provision cannot apply to the facts presented by a complaint regardless of whether the plaintiff is permitted to amend their complaint. *See Walker v. CHCA Merritt-Scully*, No. 3:21-CV-2167, 2022 WL 17477121, at *2-4 (M.D. Pa. Dec. 6, 2022) (denying leave to amend an Eighth Amendment claim because the Eighth Amendment could not apply to the factual scenario presented in the complaint); *see also Foglesong*, 2013 WL 795064, at *11-12 (denying leave to amend a Section 1985(3) claim where a plaintiff failed to present a class subject to invidious discrimination under Section 1985(3)). Given that the Court has found that the Eighth Amendment cannot apply to the events at the College Fair, amendment of Count VII would be futile. Likewise, this Court has found that Section 1985 cannot apply to alleged discrimination against Gillingham students and teachers and as such, amendment of Count VIII would be futile. Accordingly, leave to amend Counts VII and VIII is **DENIED**.

Regarding Count VI, Plaintiffs' substantive due process claim, leave to amend should be granted where it is possible to amend a complaint to allege "an injury of constitutional magnitude." *Green v. Mount Carmel Area Sch. Dist.*, No. 4:18-CV-02218, 2019 WL 1787592, at *9 (M.D. Pa. Apr. 24, 2019). Here, it is possible that Plaintiffs would be able to allege more specific and severe injury which could rise to the level of a substantive due process violation. As such, leave to amend Count VI is **GRANTED**.

V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 10) Count VI is **DISMISSED without prejudice**. Counts VII and VIII are **DISMISSED with prejudice**. Plaintiffs are granted leave to file an amended complaint within 21 days.

An appropriate Order follows.

BY THE COURT:

Dated: June 16, 2025            *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**